IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :

                                                :          CASE NO. 10-07005 (ESL)
PICK & SAVE, INC.                               :
                                                :          CHAPTER 11
          Debtor                                :
                                                :
_____ :

OPINION AND ORDER

This case is before the court upon the Debtor's *Objection to Claims # 37, 38, 39 and 40 Filed by Jose I. Perez Nieves and Oscar Muñoz Garces* (the "*Objection to Claims*", Docket No. 151) and the *Supplemental Brief in Support of Objection to Claim[s]* ("*Supplemental Brief*", Docket No. 163) alleging that the claims were filed after the deadline for filing proofs of claims and must therefore be disallowed.  Also before the court is Creditors Jose I. Perez Nieves' and Oscar Muñoz Garces' (the "Creditors") *Reply to Objection to Claims* (Docket No. 156) and *Supplement to Reply to Objection* (Docket No. 164) sustaining that their claims are not barred and that they were diligent in filing them. For the reasons stated below, the Debtor's *Objection to Claims* is hereby denied.

Procedural Background

On July 29, 2010, the Creditors received letters discharging them from their work with the Debtor (Docket Nos. 156-1, pp. 1-2, and 161, p.1, ¶ 1).

On August 2, 2010, the Debtor filed its Chapter 11 bankruptcy petition (Docket No. 1).  The Creditors were not included in the bankruptcy petition or notified of its proceedings (Docket No. 161, p. 1, ¶ 3).  The deadline to file proofs of claims for all non-governmental creditors was set for December 9, 2010 (Docket No. 14).  The Creditors were not notified of the bar date.

On November 29, 2010, the Debtor filed its first Chapter 11 *Plan of Reorganization* (Docket No. 52) and *Notice to Creditors* (Docket No. 53).  Neither included the Creditors.

On December 27 and 28, 2010, Creditor Perez and Creditor Muñoz respectively filed complaints before the Puerto Rico Court of First Instance ("PR Court of First Instance") for damages against the Debtor on account of alleged wrongful termination of their respective employments (Docket No. 161, p. 1, ¶ 5).  They were both represented by the same legal counsel, Attorney Virgilio J. Gonzalez-Perez ("Attorney Gonzalez") (Docket No. 161, p. 2, ¶ 6).  In both cases, the Debtor was served with copies of the complaints and on January 26, 2011 proceeded to file motions to stay the

state court proceedings. Consequently, the PR Court of First Instance issued judgments in both state court cases staying and closing them for statistical purposes due to the Debtor's bankruptcy filing. Docket Nos. 151, pp. 10-14, and 161, p. 2, ¶ 8. Both motions requesting the stay of the state court proceedings were properly served on the Creditors through Attorney Gonzalez, as was the *Judgment* issued by the PR Court of First Instance in both cases (Docket No. 151, pp.7, 9, 10 and 13).

On April 21, 2011, the Debtor filed an *Amended Plan of Reorganization* (Docket No. 92), which contemplated and included all timely filed claims. See Docket No. 161, p. 2, ¶ 10. It did not include the Creditors.

On May 2, 2011, the court entered the Order confirming the Debtor's *Amended Plan of Reorganization* (Docket Nos. 92 and 95). Also see Docket No. 161, p. 2, ¶ 11.

On September 20, 2011 and September 22, 2011, the Creditors filed their claims as general unsecured creditors. See Claims Register Nos. 37 and 38. On December 16, 2011, the Creditors amended their Claims to request priority under 11 U.S.C. 507(a)(4). See Claims Register Nos. 39-1 and 40-1.

On December 12, 2011, the Debtor filed a *Request for Final Decree Pursuant to F.R.B.P. 3022* (Docket No. 130) alleging that the plan had been substantially consummated and that entry of the final decree order was proper. On December 21, 2011, the Court scheduled a hearing for January 20, 2012 to consider the Debtor's *Request for Final Decree*. See Docket No. 132. On December 29, 2011, the Creditors filed *pro se* two separate *Motions of Objection* (Docket Nos. 134 and 135) averring that they had submitted proofs of claims and that they had subsequently amended them to be entitled to "administrative expense"[1] rank under Class 1. On January 11, 2012, the Court issued an *Order* ruling that the Creditors' objections would be considered at the January 20, 2012 hearing (Docket No. 138). On January 12, 2012, the Debtor filed a *Response to [the Creditors'] Objection to [its] Request for Final Decree* arguing that both of Creditors' claims are "bar dated as general unsecured claims" and that neither one can be considered an administrative expense under 11 U.S.C.

---

[1] The Court notes that in Creditors' amended proofs of claims, they did not seek administrative expenses under 11 U.S.C. § 503 but priority ranking under 11 U.S.C.§ 507(a)(4). See Claims Register Nos. 39-1, ¶ 5, and 40-1, ¶ 5.

§ 503 (Docket No. 140, ¶¶ 10 and 13). The Creditors sur-replied on January 18, 2012 sustaining the main reason for their delay was because the Debtor did not report their claim to the Bankruptcy Court of the US Trustee at any time (Docket Nos. 145 and 146).

On January 20, 2012, the Court held a hearing to consider the Debtor's *Request for Final Decree*. The Debtor was granted seven (7) days to file a formal objection to the Creditors' proofs of claims. See Docket No. 147.

On January 30, 2012, the Debtor filed its *Objection to Claims* (Docket No. 151) averring that the Creditors' claims were time barred, that they had knowledge of the bankruptcy petition filed in the case at bar since at least January 26, 2011 –when it filed and served the motion for stay of the state court proceedings– which caused the PR Court of First Instance to enter the *Judgments* dismissing both cases. The Debtor also sustains that the Creditors were not diligent in the prosecution of their claims and that therefore they must be disallowed.

On February 28, 2012, the Creditors filed a *Motion Requesting Extension of Time to File of [sic] Reply to Objection to Claims Number 37, 38, 39 and 40* (Docket No. 152) and on February 29, 2012, the court granted it (Docket No. 153). On March 6, 2012, the Creditors filed their *Reply to Objection to Claims* (Docket No. 156) arguing that the Debtor never scheduled or gave notice of the bankruptcy filing to them as creditors in spite of the fact that Fed. Rs. Bankr. P. 1007(a) and 2002 require such notice. They also sustain that they are "known creditors" whose claims were "reasonably ascertainable" by the Debtor and that as such, they were entitled to due process by receiving notice of the deadlines for filing proof of claims (bar date), a copy of the reorganization plan(s) and notice of the confirmation hearing and the confirmation order, none of which they received. They further ascertain that as known creditors, they had a right to assume that proper and adequate notice would be provided before their claims are forever barred. Thus, the Creditors conclude that their lack of notice of these proceedings make any discharge injunction inapplicable to them.

On May 8, 2012, a hearing was held to consider the Debtor's *Objection to Claims* and the Creditors' *Reply* thereto. See Docket Nos. 157, 159 and 160. The court ordered the Debtor and the Creditors to file a joint statement of uncontested facts and granted them 14 days to file supplemental

legal memoranda and 7 days thereafter to reply. See Docket Nos. 159 and 160.

On May 11, 2012, the Debtor and the Creditors jointly filed a *Statement of Uncontested Facts* (Docket No. 161).

On May 22, 2012, the Debtor filed a *Supplemental Brief in Support of Objection to Claim[s]* (Docket No. 163) reiterating that the Creditor's claims were time barred and that Creditors were not diligent in prosecuting their claims because they had actual knowledge of the filing of the instant bankruptcy petition since at least January 26, 2011 and yet they filed their claims 8 months after they became aware of it. The Debtor argues that if the Creditors had actual knowledge of the bankruptcy case, then they are deemed to have been on notice of the deadlines which are of record in the case. The Debtor also avers that the Creditors were not "known creditors" because their *Complaints* at the PR Court of First Instance were for damages due to wrongful termination, not for unpaid wages or vacations.

Also on May 22, 2012, the Creditors filed a *Motion to Supplement [Reply to] Objection to Claims* (Docket No. 164) reiterating that they had been diligent in the prosecution of their claims. Aside from the fact that the Creditors expressed their willingness to go under oath regarding the facts stated therein, the legal arguments of the *Motion to Supplement* are virtually the same as the ones stated in their *Reply to Objection to Claims* (Docket No. 156).

Legal Analysis and Discussion

*(A)     The Creditors' Claims: Pre-Petition or Post-Petition?*

The Bankruptcy Code defines a "claim" as "a right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). The term "claim" is broadly construed under the Bankruptcy Code. Nobelman v. American Savings Bank, 508 U.S. 324, 331 (1993) ("[t]he unqualified word 'claim' is broadly defined under the Code"). Also see Alexandra E. Olson, Comment, Treading Murky Waters: The Third Circuit's Search for When a Claim Arises in In re

4

Grossman's, Inc., 52 B.C. L. Rev. E. Supp. 27, 28 (2011) ("The breadth of this definition implies that Congress intended that a debtor would be able to address all legal obligations during the bankruptcy proceeding.") "The term 'claim' is [also] coextensive with the term 'debt'". Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 105.05[1] (16th ed. 2012), citing Penn. Dep't of Public Welfare v. Davenport, 495 U.S. 552 (1990). A "debt" is a "liability on a claim". 11 U.S.C. § 101(12).

The determination of whether a claim is pre-petition or post-petition is of utmost importance in bankruptcy because if the claim arises pre-petition it can be discharged by the Chapter 11 debtor's plan of reorganization. See 11 U.S.C. § 1141(d)(1)(A) (stating that the confirmation of a plan discharges the debtor from debt arising before the date of plan confirmation). The Bankruptcy Code does not clearly establish when a right to payment arises, but caselaw has held that claims "arise[] ... when all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed." In re Myers, 362 F.3d 667 (10th Cir. 2004). "[A] debt arises pre-petition when the debt is 'valid and enforceable' at the time the debtor files his bankruptcy petition." Id. at 673, quoting Buckner v. Buckner, 218 B.R. 137, 145 (B.A.P. 10th Cir. 1998). "A debt is 'valid and enforceable' pre-petition when liability has attached to the debt as of the petition date". In re Myers, 362 F.3d at 673. Also see Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp. (In re Piper Aircraft), 58 F.3d 1573, 1577 (11th Cir. 1995). A claim arises regardless of enforcement efforts (i.e. future litigation) or whether the claim is contingent, unliquidated, or unmatured when the petition is filed. See In re Stewart Foods, Inc., 64 F.3d 141, 146 (4th Cir. 1995) ("[T]hat the payments became due after the bankruptcy filing does not alter the conclusion that the payments are pre-petition obligations"); Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.), 4 F.3d 1329, 1335 (5th Cir. 1993) ("A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition"); United States v. Gerth, 991 F.2d 1428, 1433 (8th Cir. 1993) ("[D]ependency on a post-petition event does not prevent a debt from arising pre-petition."); Braniff Airways v. Exxon, 814 F.2d 1030, 1036 (5th Cir. 1987) ("The character of a claim is not transformed from pre-petition to post-petition simply because it is contingent, unliquidated or unmatured when the debtor's petition

is filed").

Until 2010, to determine if a claim was pre-petition or post-petition many courts followed the test established in Avellino & Bienes v. M. Frenville Co. (In re Frenville Co.), 744 F.2d 332 (3rd Cir. 1984): a right to payment does not exist until there is a cause of action under the applicable state law. Id. at 337.  In JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.), 607 F.3d 114, 125 (3rd Cir. 2010), however, the Third Circuit expanded the scope of a "claim" to when an individual is merely "exposed" to the debtor's product or conduct giving rise to a pre-petition injury that manifests post-petition.

In the instant case, the *Complaints* filed by the Creditors at the PR Court of First Instance constitute pre-petition claims because all the necessary transactions for Debtor's possible liability occurred on July 29, 2010, the day when the Creditors received their respective letters discharging them from their employments with the Debtor (Docket Nos. 156-1, pp. 1-2, and 161, p.1, ¶ 1).  The fact that the *Complaints* were filed post-petition, *i.e.* on December 27 and 28, 2010, respectively, does not make them post-petition claims.  See Claims Nos. 37-1, pp. 2-6, and 38-1, pp. 2-4.

*(B)     The Creditors' Due Process*

The Debtor avers that the Creditors were negligent in prosecuting their Claims for eight (8) months after they became aware of the existence of the instant bankruptcy proceeding and that therefore their *Complaints* should be barred.  Conversely, the Creditors contend that they are known creditors to the Debtor subject to adequate notice of the bankruptcy proceeding and its deadlines before their claims are forever barred by a discharge injunction.  They also argue that their general knowledge of the instant proceeding is insufficient to satisfy the requirements of due process.  In short, on the one hand, the Debtor argues that the Creditors had the affirmative duty to diligently prosecute their claims once they became aware of the instant bankruptcy proceeding, and on the other hand, the Creditors argue that it is the Debtor who had the affirmative duty to notify them of these proceedings, include them in the schedules and give them adequate notice of all deadlines.

In Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76 (1st Cir. 2008), the Court of Appeals for the First Circuit (the "First Circuit") explained that the general rule of due process in bankruptcy requires:

> notice reasonably calculated, under all the circumstances, to apprise interested parties
> of the pendency of the action and afford them an opportunity to present their objections.
> The notice must be of such nature as reasonably to convey the required information, and
> it must afford a reasonable time for those interested to make their appearance. Id. at 83,
> quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Notice to creditors embodies a "basic principle of justice – that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." In re Arch Wireless, Inc., 534 F.3d at 84, quoting City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953).

To ensure creditors' due process in bankruptcy proceedings, Fed. Rs. Bankr. P. 1007(a) and 2002 require a debtor to list all of his/her/its creditors and notify them of the key events in the bankruptcy proceeding. Caselaw distinguishes between "unknown" and "known" creditors . See In re Arch Wireless, Inc., 534 F.3d at 84. "Unknown creditors" are those whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. at 317. "Known creditors" are those whose claims and identity are actually known or "reasonably ascertainable" by the debtor. Tulsa Prof'l Collection Servs. Inc. v. Pope, 485 U.S. 478, 490 (1988). A creditor is "reasonably ascertainable" if his/her/its claim can be discovered through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 (1983). These efforts generally include "a careful search of the debtor's own records." Louisiana Dep't of Envt'l Quality v. Crystal Oil Co. (In re Crystal Oil Co.), 158 F.3d 291, 297 (5th Cir. 1998). "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession ... some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." Id. at 297. The distinction between these known and unknown creditors implies different approaches to due process. Known creditors must receive notice of deadlines for filing proofs of claims (bar date), a copy of the reorganization plan, notice of the confirmation hearing and the confirmation order. Fed. Rs. Bankr. P. 2002(a)(7), 3017(d) and 2002(f). Also see In re Arch Wireless, Inc., 534 F.3d at 82. For known creditors, general knowledge of the bankruptcy proceedings will not suffice. "[T]he fact that the creditor may ... be generally aware of the pending reorganization, does not of itself impose upon him an affirmative burden to intervene in

7

that matter and present his claim. ... [T]he [known] creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred." In re Intaco Puerto Rico, Inc., 494 F.2d 94, 99 (1st Cir. 1974).

The First Circuit recently emphasized the importance of a debtor's schedules in Guay v. Burack, 677 F.3d 10 (1st Cir. 2012). Though the controversy in that case hinged on a debtor's failure to schedule certain assets, the Court reasoned that "a bankruptcy court 'accepts' a position taken ... from bankruptcy schedules [and the representations made therein] when it grants the debtor relief, such as discharge, on the basis of those filings." Id. at 18. "The law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules..." Jeffrey v. Desmond, 70 F.3d 183, 186 (1st Cir. 1995). The same principle is applicable to a debtor's duty to list creditors in the bankruptcy schedules and to amend them upon becoming aware of a claim against the bankruptcy estate. For instance, in Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 177 (B.A.P. 9th Cir. 2007) aff'd 578 F.3d 1167 (9th Cir. 2009), the Bankruptcy Appellate Panel for the Ninth Circuit ruled that "nondisclosure of creditors (and debts) can be just as important as nondisclosure of assets." With that ruling, the Court in Khalil expressly expanded a previous ruling in Searles v. Riley (In re Searles), 317 B.R. 368 (B.A.P. 9th Cir. 2004) aff'd 212 Fed. Appx. 589, 2006 U.S. App. LEXIS 29595, 2006 WL 3431844 (9th Cir. 2006), which dealt with nondisclosure of material assets in the bankruptcy schedules. Also see DPWN Holdings (USA), Inc. v. United Air Lines, Inc., 2012 U.S. Dist. LEXIS 70026 at *36, 2012 WL 1821409 at *11 (E.D.N.Y. 2012) ("[A] debtor is required to prepare schedules of its debts, and should include potential legal claims against it, even if disputed.") Similar to the instant case[2], in Searles the debtor argued that when she filed her bankruptcy petition she was not cognizant of certain funds from her former employer's profit sharing plan and thus did not include them in her schedules. 317 B.R. at 378. Notwithstanding, the Court emphasized that regardless of her lack of knowledge at that time:

> [e]very debtor has a continuing duty to assure the accuracy and completeness of schedules. Postpetition discovery of rights that actually existed at the time of filing must be addressed in the schedules. **This implies a duty to amend**. Searles, 317 B.R.

---

[2] There is no dispute that when the Debtor filed its petition in this case, the Creditors had not filed their *Complaints* before the PR Court of First Instance, and thus the Debtor had no knowledge of the claims at that time.

at 378 (emphasis added). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002), citing In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999). "Full and honest disclosure in a bankruptcy case is 'crucial to the effective functioning of the federal bankruptcy system.'" Burnes, 291 F.3d at 1286 quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3rd Cir. 1996). "[T]he importance of full and honest disclosure cannot be overstated." Ryan Operations G.P., 81 F.3d at 362. Hence, failure to amend schedules to include pre-petition rights, be it assets or liabilities, can ultimately result in denial or revocation of a discharge order. See In re Khalil, 379 B.R. at 177; In re Searles, 317 B.R. at 378. The debtor carries a duty to amend its/his/her schedules upon becoming aware of an asset or liability. "Accordingly, a debtor's objection to a late claim cannot constitutionally be sustained and the creditor's claim barred if the debtor's failure to list, or inaccurate listing of, the creditor causes the creditor to miss the proof of claim deadline." Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 507 (B.A.P. 1st Cir. 2005)[3].

In the instant case, when the Debtor filed its bankruptcy petition, the Creditors had not filed any complaint regarding the alleged wrongful termination of their employments, which happened only 4 days prior. There is no indication or evidence in the record that suggests that the Creditors had informed the Debtor of their intention to claim their alleged wrongful terminations prior to the filing of the bankruptcy petition. Consequently, the Debtor could not reasonably infer at that time that the Creditors' claims were "reasonably ascertainable". In re Arch Wireless, Inc., 534 F.3d at 81. Notwithstanding, when the Debtor was summoned with the Creditors' *Complaints* or became aware

---

[3] The Court notes that the Debtor cited this case in its *Supplemental Brief in Support of Objection to Claim* (Docket No. 163, p. 7) for the proposition that service of notice of pending bankruptcy proceedings on a creditor's attorney is deemed to bestow upon the creditor actual knowledge of the bankruptcy and thus lack of a specific notice of the bar date does not violate the creditor's right to due process. Notwithstanding, in In re San Miguel Sandoval, contrary to the one at bar, the debtor included the creditor in controversy in its schedules. 327 B.R. at 498.

of them[4], they became *ipso facto* "known creditors" to the Debtor. Its duty then was to immediately amend its schedules to include them as creditors and give them proper notice of the bankruptcy proceeding. In re Arch Wireless, Inc., 534 F.3d at 81. The Debtor cannot shift that duty onto the Creditors.

*(C)     Proofs of Claims in Chapter 11 Cases*

Creditors can file proofs of claims in bankruptcy proceedings pursuant to 11 U.S.C. § 501. Filed claims are "deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). A disallowed claim will not participate in the case, vote on Chapter 11 plans or receive any payment with regards to that claim. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 502.01 (16th ed. 2012). Section 502(b) establishes the grounds for objecting a proof of claim. Subsection (b)(9) provides that a proof of claim may be disallowed if:

> [it] is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required. 11 U.S.C. § 502(b)(9).

The effect of the time frame on which a proof of claim is filed depends largely upon the chapter of the Bankruptcy Code under which the case is proceeding. The reason for the distinction was explained by the Court of Appeals for the Ninth Circuit in Levin v. Maya Constr. (In re Maya Constr. Co.), 78 F.3d 1395 (9th Cir. 1996), as incorporated by the First Circuit in Arch Wireless, Inc, 534 F.3d at 85:

> In contrast to the rule governing proofs of claims in a Chapter 11 suit, which instructs the court to fix a proof of claims deadline and permits the court to extend that deadline "for cause shown," the rule governing Chapter 7 and 13 proceedings provides that proofs of claim shall be filed within 90 days of the first creditors meeting and specifies limited exceptions. Thus, once the creditors [in Chapter 7 and 13 cases] had received notice of the creditors meeting, they had effective notice that proofs of claim were due

---

[4] The Court notes that when the Debtor filed the motion to stay the Creditors, it alleged that the summons were defective because the summons did not have the signature, time, place and method of service and thus appeared before the PR Court of First Instance without submitting itself to its jurisdiction (Docket No. 151, pp.6, ¶ 2 and 8, ¶ 2). Regardless, the Debtor does not dispute that it was served with copies of the Creditors' *Complaints*.

within 90 days, unless very limited exceptions applied. In contrast to creditors in a Chapter 7 or 13 case, even if [a Chapter 11 creditor] had received notice of a creditors meeting or any other formal notice, ... he still would not have known when the deadline for filing proofs of claims was, and therefore, cannot be said to have been given any notice.

Fed. R. Bankr. P. 3003 governs the filing of proofs of claim in Chapter 11 cases like the instant one by providing in its pertinent part that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Likewise, LBR 3003-1 sets the bar date for Chapter 11 claims as follows:

Proofs of claim in Chapter 11 cases must be filed: (a) on or before ninety (90) days from the date first set for the § 341 meeting of creditors; and, (b) for governmental units, within one hundred and eighty (180) days after the date of the order for relief, **unless otherwise ordered by the court.** Id. (emphasis added).

These two rules must be read in conjunction with Fed. R. Bankr. P. 9006(b)(1), which allows in part that:

Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

In Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P., 507 U.S. 380, 389 (1993), the Supreme Court addressed the scope of "excusable neglect" set forth in Fed. Bankr. R. 9006:

Hence, by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

Following that analysis, the Supreme Court established the applicable standard:

Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable", we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. Id. at 396.

Also see Perea Ferrer v. Irizarry Concepcion, 2010 Bankr. LEXIS 2426, 2010 WL 7698071 (BAP 1st Cir. 2010) (incorporating this analysis intertwining Fed. Rs. Bank. P. 3003 and 9006 and applying the Pionner standard).

In the instant case, the Court finds that extending the bar date to permit the Creditors' claim is warranted for various reasons. As previously discussed, it was the Debtor's main duty to amend its schedules once it became aware of the Creditors' *Complaints*. The Creditors also have "a right to assume that proper and adequate notice will be provided before his claims are forever barred." Intaco, 494 F.2d at 99. The totality of the circumstances of this case, in addition to the "basic principles of justice"[5], warrant the discretion afforded by Fed. Rs. Bankr. P. 3003 and 9006 and LBR 3003-1 to extend the bar date to allow the Creditor's *Complaints*. The Court, however, will not rule on the validity of such claims at this time.

*(D)      The Creditors' Claims: Priority or Administrative Expense?*

The Creditors alleged in their *Motions of Objection* that their claims are entitled to "administrative expense" status. (Docket Nos. 134 and 135, ¶ 1(b) respectively).

In Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950 (1st Cir. 1976), the First Circuit established a two-prong test to determine whether or not a claim qualifies as an administrative expense: (1) the right to payment must arise from a **post-petition** transaction with the debtor estate, rather than from a pre-petition transaction with the debtor, and (2) the consideration supporting the right to payment must be "beneficial to the estate" of the debtor. Id. at 954 (emphasis added). This two-prong test was subsequently upheld by the First Circuit in In re FBI Distrib. Corp., 330 F.3d 36, 42 (1st Cir. 2003): "In general, for a claim to qualify as an administrative expense under subsection 503(b)(1): (1) it must have arisen from a transaction with the trustee or debtor in possession, rather than from a pre-petition transaction with the debtor, and (2) the consideration supporting the claim must have benefitted the estate in some demonstrable way".

As previously discussed, the Creditors' claims are pre-petition, not post-petition, and thus do not satisfy the first prong of the administrative expense test. In re Mammoth Mart, Inc., 536 F.2d at 954. Also, the claims have no demonstrable benefit to the bankruptcy estate. The court therefore denies their request for administrative expenses.

The Court notes, however, that the Creditors' amended proofs of claims requested "priority

---

[5] In re Arch Wireless, Inc., 534 F.3d at 84, quoting City of New York, 344 U.S. at 296.

status" under 11 U.S.C. § 507(a)(4).

Unsecured claims are divided into two groups: those entitled to priority under Section 507 of the Bankruptcy Code and those not entitled to priority. Priority claims must be paid in full before any payment is made to nonpriority claims. In reorganization cases like the one at hand, priority claims must be paid in full in order to confirm reorganization plans under Chapter 11. See 11 U.S.C. § 1129(a)(9); William D. Warren & Daniel J. Bussel, Bankruptcy, Foundation Press, 8th ed. 2009, p. 121. Section 507(a)(4)(A) of the Bankruptcy Code provides as follows:

(a) The following expenses and claims have priority in the following order:
...
(4) Fourth, allowed unsecured claims, but only to the extent of $11,725 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for--

(A) wages, salaries, or commissions, including vacation, **severance**, and sick leave pay earned by an individual; ... 11 U.S.C. § 507(a)(4)(A) (emphasis added).

The Creditors' *Complaints* seek severance payment (Claims Register Nos. 38-1, p. 3, ¶ 17, and 37-1, p. 6, ¶ 36), and therefore may be entitled priority up to the amount of $11,725 pursuant to Section 507(a)(4)(A).

### Conclusion

For the reasons stated herein, the Debtor's *Objection to Claims* (Docket No. 151) and *Supplemental Brief* (Docket No. 163) alleging that the Creditors' are time barred and must therefore be disallowed is hereby denied. Creditors' request for administrative expenses is also hereby denied.

In San Juan, Puerto Rico, this 13th day of September, 2012.

SO ORDERED.

Enrique S. Lamoutte
United States Bankruptcy Judge

13